**Edward P. Kelly, Esq.**
**Fisher Fallon, P.C.**
**517 Passaic Avenue**
**Spring Lake, New Jersey 07762**
**(732) 449-2177**
**Attorneys for Plaintiff**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |
|---|---|
| **William P. Duncan, Jr.,** | |
| **Plaintiff,** | **07 CV 1570** |
| **- against -** | |
| **Michael Pocquat, in his official and private capacity, Richard DeLaRoche in his official and private capacity (then Mayor, now former mayor of Mount Olive Township), Edward Katona, Jr., in his official and private capacity and Mount Olive Township, a municipal corporation.** | **Amended Complaint and Demand for Jury Trial** |
| **Defendants.** | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff, by his attorneys, Fisher Fallon, PC and Michael G. O'Neill, states for

his amended complaint as follows:

1.      This action is pursuant to 42 U.S.C. §1983, for damages in having been

selectively and maliciously prosecuted and imprisoned by Mount Olive Township,

under color of law, and in retaliation for verbal statements made by plaintiff criticizing

an illegal Mount Olive Township police roadblock which delayed plaintiff's travel to a

hospital.  The above named defendants denied plaintiff access to critical discovery

evidence known and proven to exist, obstructed justice, employed harassment and

intimidation tactics, violated due process protection, maliciously prosecuted plaintiff.

acted outside their jurisdiction, committed and suborned multiple acts of perjury during

court testimony, and performed other acts under color of law, and outside their official

and legal capacity in order to punish plaintiff for his criticism of the Mount Olive

Township Police Department and to send a message to others not to do the same.

## Jurisdiction and Venue

2.      This court has jurisdiction of this action under 42 U.S.C. §1983, 28

U.S.C. §1331, 28 U.S.C. §1343 and 28 U.S.C. §1367.

3.      Venue is properly laid in the District of New Jersey because

defendants are all residents of the State of New Jersey.

## Parties

4.      Plaintiff is an individual and a resident of the State of New Jersey.

5.      Defendant Michael Pocquat ("Pocquat") was, at all times relevant to

this lawsuit, employed by the defendant Mount Olive Township ("Mount Olive") as a

member of its Police Department.

6.      Defendant Richard DeLaRoche ("DeLaRoche") was, at all times

relevant to this lawsuit, employed by Mount Olive as its Mayor.

7.      In his capacity as Mayor of Mount Olive, DeLaRoche was a final

policymaker on behalf of Mount Olive with respect to his acts and decisions

complained of herein.

2

8.      Defendant Edward Katona, Jr. ("Katona") was, at all times relevant to this lawsuit, employed by Mount Olive as its Chief of Police.

9.      In his capacity as Chief of Police, Katona was a final policymaker on behalf of Mount Olive with respect to his acts and decisions complained of herein.

10.      Defendant Mount Olive is a municipal corporation formed under the laws of the State of New Jersey.

11.      Brian Mason ("Mason") was, at all times relevant to this lawsuit, employed by Mount Olive as its Prosecuting Attorney.

12.      In his capacity as Prosecuting Attorney, Mason was a final policymaker on behalf of Mount Olive with respect to his acts and decisions complained of herein.

**Facts**

13.      On Sunday, August 4th, 2002, the plaintiff responded to an accident sustained by his elderly aunt, who had fallen down concrete stairs and broken her hip. Plaintiff's aunt was transported from her home to the hospital by ambulance. Plaintiff set out for the hospital in his automobile in order to assist with paperwork, give blood if required, and provide emotional support for his aunt.

14.      To reach the hospital, plaintiff was traveling on State Highway 46. At about one o'clock in the afternoon, plaintiff was forced to a complete dead stop by traffic. After a full stop for a few minutes and slowly moving forward, plaintiff noticed

3

a police roadblock as the source of the delay. Orange cones were placed in such a manner as to force traffic from two lanes of 55 MPH traffic into one lane, whereby each vehicle was forced to a full stop for police inspection. Where plaintiff was first stopped, there was a line of cars at least 950 feet in length of bumper to bumper traffic behind the roadblock, creating a delay of approximately 8 minutes. Police instructed each vehicle to move to an inspection staging area and to stop completely. Pursuant to these roadblocks, which plaintiff had experienced on previous occasions, police officers visually searched through the windows into the interior of the stopped cars for contraband and any possible criminal or motor vehicle violations while stopped at the roadblock.

15.     Plaintiff believed (correctly) that the roadblock was unconstitutional. Frustrated and annoyed that his aunt's ambulance would have been delayed in its trip to the hospital by the unconstitutional police roadblock, plaintiff stopped at a pay phone to call the Mount Olive Township police department and express his displeasure with and opposition to its unwarranted and illegal activity. Plaintiff found himself without change to make a phone call, and he therefore dialed 911 to reach the Mount Olive Police Department.

16.     In his phone call to the Mount Olive Police Department, plaintiff criticized the police for having the roadblock and asked the operator whether they lived in a Nazi state. In doing so, plaintiff used foul and offensive language.

17.     Plaintiff's criticism of Mount Olive's roadblock was an exercise of his First Amendment right to redress grievances and to engage in free speech.

18.        The Mount Olive police immediately traced plaintiff's call and tracked him down on the way to the hospital.  Mount Olive police seized plaintiff and forced him back to the site of the roadblock in order to have their supervisor (Pocquat) speak to him.  Plaintiff was informed that he was not arrested, but his free movement was impeded.  Plaintiff thusly detained, Pocquat lectured him about the need for the roadblock to search for terrorists because of events surrounding the 9/11 attack on the World Trade Center.  Plaintiff's detention lasted approximately twenty minutes, during which time plaintiff was involuntarily subjected to a lecture on the virtues of the roadblock.  At no time did Pocquat state that plaintiff had violated any law when dialing 911 or cite any harassment of his police department, but he repeatedly stated his displeasure that plaintiff had referred to his officers as "Nazis." Eventually Pocquat released plaintiff and allowed him to continue to the hospital.

19.        Upon information and belief, at some time between August 4 and August 27, 2002, Pocquat decided to initiate institute a criminal prosecution against the plaintiff based on plaintiff's phone call to the Mount Olive Police Department. Pocquat's decision was motivated by his displeasure and disagreement with the content of plaintiff's phone call, specifically plaintiff's criticism of the roadblock and his indirect suggestion that the Mount Olive Police Department were "Nazis."

20.        Upon information and belief, as discussed more fully below, Pocquat's decision was made in conjunction with the other individual defendants and Mason, or the other individual defendants and Mason subsequently joined in with and ratified Pocquat's decision.

21.     Approximately three weeks later, Pocquat began calling members of plaintiff's family stating that he was trying to locate where plaintiff lived, even though Mount Olive police had written down plaintiff's full name and address at the time of the roadblock incident and knew exactly where he lived.

22.     On the evening of August 27, 2002 at approximately 10 PM, Pocquat sent a police officer to the home of plaintiff's elderly mother.  The officer demanded to know plaintiff's home address.  He refused to state his reason but told her that the police had her home under surveillance in their search for plaintiff.  He also stated that "he [plaintiff] is in a lot of trouble."  These actions served no legitimate purpose but were designed to terrorize plaintiff's mother.  Upon information and belief, the Mount Olive Police Department failed to recognize the irony in using Nazi-like tactics out of indignation at being called Nazis.

23.     Later that same evening, plaintiff was served with a Notice to Appear / Complaint / Summons originated by Pocquat.  The notice was delivered to plaintiff at his home at approximately 10:15 PM.  It was signed and dated by Pocquat earlier that day, and it contained the full and accurate home address for plaintiff, thereby demonstrating that the Mount Olive Police had plaintiff's correct home address all along and had no need to be harassing his mother late at night.

24.     This late night harassment of plaintiff's mother evidences malice on the part of Pocquat and those acting in concert with him.

6

25.      In the complaint that he made against plaintiff. Pocquat alleged that plaintiff "knowingly placed a 911 call knowing no emergency existed and using offensive language to convey his dissatisfaction  with Mt. Olive."  The complaint cited Section 2C:33-3(e) of the New Jersey Statutes as the basis for the criminal charge.  That statute makes it a 4th Degree Felony to place a 911 call without the purpose of reporting the need for 911 service.

26.      Because plaintiff was charged with a felony, he could not be tried in the Mount Olive Municipal Court.  Nevertheless, plaintiff was summoned to appear in that Court on September 9, 2002 to answer the complaint.  Thereafter, the individual defendants and Mason attempted to prosecute plaintiff on the felony charge.  Eventually, however, the Mount Olive Municipal Court referred the charge to the Morris County Prosecuting Attorney, who declined to prosecute the felony.  On July 22, 2003, the Morris County Prosecuting Attorney downgraded the charge to a violation of Section 2C:33-4A of the New Jersey Statutes and referred it back to the Mount Olive Municipal Court for disposition.

27.      Section 2C:33-4A of the New Jersey Statutes provides in relevant part that:

> Except as provided in subsection e., a person commits a petty disorderly persons offense if, with purpose to harass another, he:
>
> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

28.     Although not expressly provided by statute, the New Jersey Supreme Court in a 1997 decision held that the intent to harass was an integral part to proving a violation of Section 2C:33-4A.

29.     More importantly, the right to criticize the government is the most protected form of free speech. As a matter of law, it was constitutionally impossible for plaintiff's single phone call placed to a municipal police department, that lasted well under a minute, which expressed anger over a specific act of the police department, and which contained no threats, no fighting words, and no personal attacks aimed at any person in his or her individual capacity, to constitute illegal harassment.

30.     Plaintiff's right to criticize government, in particular, the Mount Olive Police Department, was clearly established long before the events giving rise to this lawsuit. Each defendant herein, and Mason, were actually aware of plaintiff's such right. Nevertheless, each defendant herein, and Mason, intentionally and maliciously subjected plaintiff to a criminal prosecution for the exercise of that right, in order to retaliate against him for having done so.

31.     Defendants' prosecution of plaintiff for violation of Section 2C:33-4A of the New Jersey Statutes was utterly without probable cause.

32.     Defendants acted with malice in the prosecution of plaintiff for violation of Section 2C:33-4A of the New Jersey Statutes.

33.     Plaintiff was tried before the Mount Olive Municipal Court on March 29, 2004. At the trial, Pocquat perjured himself. Two additional members of the Mount

Olive police department also gave perjured testimony.  Upon information and belief,

Pocquat suborned their perjury.  After trial, plaintiff was found guilty by Municipal

Judge Philip J. Maenza ("Maenza").

34.	Upon information and belief, the realities of Municipal Court practice

being what they are, Maenza was given to understand by the individual defendants, and

Mason, that the prosecution of plaintiff was "personal."  The exact mode of such

communication is presently unknown to the plaintiff, but it may be inferred from the

circumstances.  Maenza was given to understand that it was a matter of the highest

importance to the individual defendants, for personal rather than governmental

purposes, that plaintiff be convicted and punished.  Maenza willingly accommodated

the individual defendants.  He convicted plaintiff and sentenced him to the maximum

fine of $1,000 together with the maximum jail sentence of 30 days.

35.	That defendants' malice was channeled through Maenza is aptly

demonstrated by the fact that Maenza refused to defer plaintiff's sentence for a short

time, notwithstanding the fact that plaintiff's former wife was undergoing cancer

surgery, leaving plaintiff to care for their minor children.

36.	Maenza ordered plaintiff to be incarcerated immediately, and he was

imprisoned in the Morris County Correctional Facility from March 29, 2004 until

March 31, 2004, when plaintiff was able to obtain a stay of sentence.

37.	On April 14, 2005, plaintiff's conviction was reversed by Superior

Court of New Jersey Appellate Division.  That court held that the charges against

plaintiff were insufficient as a matter of law, and it ordered that all charges against

plaintiff be dismissed.

38.    The illegal prosecution of plaintiff was conducted by, or at the very

least, knowingly ratified by, final policymakers of Mount Olive.

39.    Mason was a final policymaker of Mount Olive.  As prosecuting

attorney, he was charged with making policy regarding the prosecution of crimes and

offenses.  Mason had been Mount Olive's prosecuting attorney since 1991.  By virtue of

his long experience working with Mount Olive's police department and its members,

Mason understood perfectly well that Pocquat's prosecution of plaintiff was in

retaliation for plaintiff's stinging criticism of the Mount Olive police department.  As an

experienced prosecutor, it was inconceivable that Mason was unaware of the

constitutional prohibition against such a prosecution.  Mason acquiesced in the

prosecution of plaintiff, because he had instituted the policy of abdicating his

prosecutorial discretion and deferring to the wishes, demands and desires of the Mount

Olive police department and its members, even when those wishes, demands and desires

violated the constitutional rights of individuals.

40.    As then Chief of Police, Katona is a final policy maker of Mount

Olive.  Katona was actively involved in the prosecution of plaintiff.  Among other

things, plaintiff served discovery requests upon Katona, and plaintiff instituted a civil

OPRA proceeding against Mount Olive in Superior Court in order to obtain 911 records

from the Mount Olive police department.  Upon information and belief, Katona

provided false information to Mason concerning the existence of Mount Olive records

and participated in Mount Olive's attempt to prevent plaintiff from obtaining

information necessary and helpful to his defense.  The prosecution of plaintiff and his

accompanying Superior Court lawsuit were the subject of a number of newspaper

articles, and, according to Mason, was expensive to Mount Olive.  Given the small size

of Mount Olive's police department, it was inconceivable that Pocquat could institute

and maintain for several years an expensive, high profile prosecution of an individual

over a petty spat without the active acquiescence and ratification of Katona.

41.     At the time of the events giving rise to this lawsuit, Katona had been

a member of Mount Olive's police department for over 20 years.  He also held at least

one bachelor's degree in the administration of law enforcement.  By virtue of his

training, experience and education, Katona knew that the prosecution of an individual

for criticizing the actions of the police department was unconstitutional.

42.     As then Mayor of Mount Olive, DeLaRoche was a final policymaker

of Mount Olive.  DeLaRoche was fully aware of the prosecution of plaintiff because of

the publicity that it had generated and because Mount Olive was sued by plaintiff in

Superior Court.  Furthermore, plaintiff wrote to DeLaRoche before his trial,

complaining of his illegal prosecution and requesting that DeLaRoche exercise his

authority as Mayor to stop the violation of plaintiff's constitutional rights.  By virtue of

the foregoing, DeLaRoche ratified the illegal prosecution of plaintiff for the exercise of

his first amendment rights.

**1st Claim**

11

43.      By virtue of the foregoing acts, defendants have violated plaintiff's rights under 42 U.S.C. §1983, as a result of which plaintiff has been damaged.

44.      Among other things, defendants violated plaintiff's rights under the 1st amendment to the exercise of his free speech without fear of governmental prosecution.

45.      In addition, defendants' violated plaintiff's rights under the 4th amendment not to be "seized" in connection with an unlawful and baseless criminal prosecution.

## 2nd Claim

46.      By virtue of the foregoing acts, defendants have violated plaintiff's rights under Section 10:6-2 of the New Jersey Statutes (the New Jersey Civil Rights Act), as a result of which plaintiff has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendants for all relief provided by law, including without limitation:

a)      Awarding plaintiff a money judgment for his damages, including but not limited to economic damages, shame, humiliation, embarrassment, violation of civil rights and mental distress;

b)      Imposing civil penalties and similar relief as provided by law;

c)       Awarding punitive damages, the costs of this lawsuit, interest and a

statutory attorney's fee, as provided by law; and

c)       Granting such further and additional relief as the Court deems just and

appropriate under the circumstances.

Dated: August 29, 2008

                                        **FISHER FALLON, P.C**
                                        Attorneys for Plaintiff
                                        *William P. Duncan, Jr.*
                                        517 Passaic Avenue
                                        Spring Lake, New Jersey 07762
                                        (732) 449-2177

                              By:       /s/ Edward P. Kelly
                                        Edward P. Kelly, Esq. (EPK 4213)

                                        **MICHAEL G. O'NEILL**
                                        Attorney for Plaintiff
                                        *William P. Duncan, Jr.*
                                        30 Vesey Street, Third Floor
                                        New York, New York 10007
                                        (212) 581-0990

**JURY DEMAND**

Plaintiff demands trial by jury in this action.

Dated:  August 29, 2008

                                   **FISHER FALLON, P.C**
                                   Attorneys for Plaintiff
                                   *William P. Duncan, Jr.*
                                   517 Passaic Avenue
                                   Spring Lake, New Jersey 07762
                                   (732) 449-2177

By:   /s/ Edward P. Kelly
        Edward P. Kelly, Esq. (EPK 4213)

                                   **MICHAEL G. O'NEILL**
                                   Attorney for Plaintiff
                                   *William P. Duncan, Jr.*
                                   30 Vesey Street, Third Floor
                                   New York, New York 10007
                                   (212) 581-0990